KELLY, Circuit Judge, dissenting. The Arkansas Court of Appeals denied James Daniels relief on his Sixth Amendment claim alleging denial of his right to counsel of choice. After a recitation of the chronology of events in Daniels’s case, that court held, with little elaboration, “that the trial judge did not abuse his discretion and that Daniels failed to demonstrate prejudice amounting to a denial of justice.” Daniels, 2012 WL 11276, at *3. Because that holding is both “contrary to” and “an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,”[2] 28 U.S.C. § 2254(d)(1), I respectfully dissent. The court characterizes the state court’s determination “that Daniels failed to demonstrate prejudice amounting to a denial of justice,” Daniels, 2012 WL 11276, at *3, as an “alternative holding” that merely creates “some tension” with Gonzalez-Lopez. I disagree. In my view, the prejudice inquiry is at the core of the Arkansas Court of Appeals’ abridged legal analysis. By focusing in significant part on the competent representation provided by Daniels’s public defender, the Arkansas court’s analysis is in direct conflict with Gonzalez-Lopez: The right to select counsel of one’s choice ... has been regarded as the root meaning of the constitutional guarantee. Where the right to be assisted by counsel of one’s choice is wrongly denied, therefore, it is unnecessary to conduct an ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation. Deprivation of the right' is • “complete” when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless óf the quality of the representation he. received. 548 U.S. at 147-48, 126 S.Ct. 2557 (citations omitted). The Arkansas Court of Appeals’ holding is simply contrary to this clearly established holding of the Supreme Court. I also disagree that the Arkansas court’s opinion contains an entirely distinct holding—that “the trial court did not abuse his discretion,” Daniels, 2012 WL 11276, at *3—that supports denying the petition. A state court could offer alternative holdings, only one of which is legally or factually proper, and that could support the denial of a § 2254 petition. But in this case, the abuse-of-discretion holding was not independent of the prejudice inquiry, and thus they are not truly alternative holdings. Instead, the Arkansas court started its analysis with an erroneous statement of the law: that the likelihood of prejudice was a component of the abuse of discretion inquiry. Id. at *2 (explaining that, in exercising its discretion about whether to grant a continuance based on “new counsel’s néed to prepare,” a trial court “may consider ,.. whether denial will likely result in prejudice to the defendant,” making reliance-on that factor a permissible basis upon which an appellate court could find that the trial court did not abuse its discretion).. A more natural reading, therefore, is to view the no-abuse-of-discretion finding as based on the facts stated in support of it, namely that Daniels was unable to retain counsel and that he was competently represented by the public defender in the case. However, even if wé assume that this one sentence contains -two unrelated holdings and that the abuse-of-discretion holding was not based in any way on the prejudice inquiry, that holding nonetheless represents an unreasonable application of clearly established law. It is cléarly established that “a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel a • mere formality.” Ungar, 376 U.S. at 589, 84 S.Ct. 841; see also Slappy, 461 U.S. at 11-12, 103 S.Ct. 1610 (explaining that the focus on expeditiousness cannot be “unreasoning and arbitrary”). But the Arkansas court did not inquire whether the trial court acted in an unreasoning and arbitrary manner, nor did it determine whether Daniels’s request for delay was justifiable. Instead, it focused exclusively on the fact that Daniels was unable to retain counsel in the month prior to trial. The court here, too, notes: “[tjhat the trial judge had declared earlier that he would not continue the trial based on the appearance of a new attorney did not relieve Daniels of the obligation to identify an attorney who would represent him with the proposed continuance.” ■ - But this rationale ignores practical reality. More particularly, such a holding would require that, in order to protect his Sixth Amendment rights, Daniels ignore the trial court’s clear, unequivocal, and repeated admonitions regarding its unwillingness to grant a continuance. Futilely, he should have endeavored to identify counsel who would hypothetically be willing to represent him if the trial court changed its mind. Such a requirement conditions a defendant’s Sixth Amendment right to counsel of choice on the very myopic, unreasoning, and arbitrary state court decision making that is forbidden by clearly established federal law. Of course, under different circumstances,- it may indeed be relevant-to the inquiry that a defendant has not successfully retained counsel. Cf. Urqhart, 726 F.2d at 1319. But when a trial court has already indicated that it will insist on expeditiousness without regard to any other factors, it is the trial court, not the defendant, who has made retention of counsel improbable, if not impossible. Because the decision of the Arkansas Court of Appeals is both contrary to, and involves an unreasonable application of, clearly established federal law, I would reverse the district court’s denial of Daniels’s § 2254 motion. . While the court declines to address what clearly established law requires, (he precedents cited by Daniels do constitute clearly established law. The court is correct to note that "clearly established law” refers to holdings as opposed to dicta, but the language it cites from Slappy and Ungar is a necessary component of the Court’s holding in those cases. See Holding, Black’s Law Dictionary (10th ed. 2014) ("A court’s determination of a matter of law pivotal to its decision; a principle drawn from such a decision.”). In those cases, in order for the Court to find that the trial court did not violate the defendant's right to counsel, it was necessary to set out a standard for when a violation of that right would occur, and then compare the facts of those cases to that standard. That is why the Court explained in Ungar that "a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality,” 376 U.S. at 589, 84 S.Ct. 841, and further held, ”[t]he answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request was denied.” Id. And similarly, while it is true that indigent defendants do not have a right to choose their appointed counsel if they are unable to pay, there can be no serious dispute that defendants have the right to be represented by retained counsel of their choice, regardless of their indigent status. Cf. Gonzalez-Lopez, 548 U.S. at 144, 126 S.Ct. 2557 ("We have previously held that an element of this right is the right of a defendant who does not require appointed counsel to choose who will represent him.” (emphasis added)).